**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

In The United States District Court
District of Columbia

Abdul Love *MPN8
Pontiac Corr. Ctr.
P.O.B 99    Plaintiff
Pontiac, Il. 61764

vs                                    No.

United States Secret Service
Keith Prewitt
Craig Ulmer
          defendants

Case: 1:12-cv-01046
Assigned To : Bates, John D.
Assign. Date : 6/26/2012
Description: FOIA/Privacy Act

I

Jurisdiction and Venue

1.  This is a civil action authorized by 5 U.S.C.
section 552 to redress the deprivation of
rights secured by the Constitution of the
United States. This court has jurisdiction
under 28 U.S.C. section 1331. Plaintiff seeks
declaratory relief pursuant to 28 U.S.C. section
2201 and 2202. Plaintiff seeks injunctive
relief authorized by section 2283, 2284, and
Rule 65 of the Federal Rules of Civil Procedure

**RECEIVED**

JUN - 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

RECEIVED
Mail Room

JUN - 4 2012

Angela D. Caesar, Clerk of Court

2. The District of Columbia is an appropriate venue under 28 U.S.C. section 1391 because it is where the Secret Service is situated.

## II
### Plaintiff

3. Plaintiff Abdul Love, is and was at all times mentioned herein a citizen of the United States and a resident of the State of Illinois

## III
### Defendants

4. Defendant, the United States Secret Service is a public entity. It is being sued in its official capacity

5. Defendant, Keith Prewitt, is and was at all times mentioned herein Deputy Director of the Secret Service. He is being sued in his individual and official capacities.

6. Defendant, Craig Ulmer, is and was at all times mentioned herein Secret Service

2

Freedom of Information and Privacy Acts Officer. He is being sued in his individual and official capacities.

## IV
## Facts

6. On October 5, 2005, plaintiff was arrested for possession of controlled substance with intent to deliver a violation of 720 ILCS 540/401(a)(2)(D), following a traffic stop at the B.P. Amoco located at 2930 Belvidere Rd, in Waukegan, Illinois.

7. Plaintiff was an acquaintance of an individual by the name of Silas Peppel. Upon information and belief that Mr. Peppel had participated in the commission of the above-mention drug offense as an informant in an effort to mitigate any punishment he may receive for counterfeiting U.S. currency, plaintiff filed a supplemental motion for discovery requesting information about Mr. Peppel (see motion marked as exhibit A.)

3

8. Said motion was granted and the State filed a motion to reconsider ( see motion marked as exhibit B). Upon further review the Court sided with the State and quashed the motion for supplemental discovery.

9. On or about June 4, 2009, after several failed attempts to interview Mr. Peppel plaintiff served him with a subpoena to appear at plaintiff's trial on July 13, 2009.

10. On or about July 7, 2009, a motion to quash subpoena was heard and denied. On or about July 9, 2009, a motion to reconsider was heard. Item 3 of said motion reads, " In consideration of the strong policy reasons favoring secrecy and the safety of confidential informants, Silas Popple is requesting to make an offer of proof by way of sealed affidavit detailing his participation and anticipated testimony." (see motion marked as exhibit C.) In addition to Mr. Peppels affidavit a

4

memorandum by the Waukegan Police
Department was submitted for in camera
inspection.

11. On July 10, 2009, the subpoena was
quashed and both the affidavit and
memorandum were placed under seal. On
July 15, 2009, plaintiff was found guilty of
possession of controlled substance with
intent to deliver.

12. On November 23, 2009, plaintiff received a
police report from the Carbondale, Illinois
Police Department. Said police report implicates
Mr. Peppel in counterfeiting over $35,000.⁰⁰ in
U.S. currency. It also details his willingness
to speak to authorities about the
repercussions of his actions. (see report
marked as exhibit D.)

## V
### Exhaustion of Legal Remedies

13. On or about May 18, 2010, plaintiff filed a

5

Freedom of Information Act (FOIA) request for all information or arrest that resulted from information obtained as a result of the Carbondale, Illinois, police report (see FOIA request marked exhibit E).

14. On December 20, 2010, defendant Ulmer issued a letter stating no records relating to my FOIA request could be found (see letter marked exhibit F). On or about February 16, 2011, plaintiff appealed the FOIA decision of defendant Ulmer to defendant Prewitt. On March 18, 2011, defendant Prewitt issued a letter concurring with defendant Ulmer. (see letter marked exhibit H.)

## VI
## Legal Claims

15. Plaintiff reallege and incorporate by reference paragraph 1-14

16 Denying plaintiff access to the records

requested in his FOIA request is a violation
of his right to due process

17. No person shall be deprived of life, liberty
or property, without due process of law
U.S. Constitution Amendment V and XIV

18. The government is exempt from disclosing
records or information compiled for law
enforcement purposes, but only to the extent
that the production of such law enforcement
records or information would not deprive
a person of a right to a fair trial or an
impartial adjudication.   Title 5 U.S.C.
section 552 (b)(7)(B).

19. Whenever informant records maintained
by a criminal law enforcement agency under
an informant's name or personal identifier
are requested by a third party according
to the informant's name or personal identifier
the agency may treat the records as not
subject to the requirements of this
section unless the informant's status as

7

an informant has been officially confirmed.
Title 5 U.S.C section 552(c)(1)(B)(2).

20. When an informant is alleged to have
participated in, witnessed, or helped to arrange
the criminal events and disclosure of the
informants identity will not jeopardize health
and safety, the privilege to withhold the
informant's identity will generally give way
to the defendants right to prepare a
defense by obtaining access to the informant.
Rovario v. United States, 353 U.S. 53, 61-62
(1953).

21. As a general rule of federal constitutional
law, the government's privilege to withhold
its informant's identity is no longer
applicable if the identity has already been
disclosed "to those who would have cause
to resent the communication." Rovario,
353 U.S at 60, n..8

22. It's abundantly clear from exhibit
C that Mr. Peppel was an informant and

8

participated in the offense that led to plaintiffs arrest and conviction. Further more it should be noted that it was the plaintiff who informed all parties via ex parte communication with the presiding judge of Mr Pappels school and home address. 2 years prior to trial (see letter marked exhibit H.)

23 Further examination of exhibit D shows Det. Aleason had contact with Secret Service agent Paul Foster stating, "I contacted Paul Foster, United States Secret Service agent. Foster told me that he would take over the case and investigate it. I provided agent Foster with a copy of the materials of my investigation. Please place this case as inactive, referred to the United States Secret Service."

24. At the very least petitioner should of been provided with a copy of the materials Det Aleason fowarded to agent Foster.

9

25. Plantiff contends that the Secret Service has been and still is withholding information that is pertinent to his drug conviction and if disclosed would allow a proper adjudication of said charges.

## VIII
## Prayer for Relief

Wherefore, plantiff respectfully pray that this court enter judgment:

26. Granting plantiff a declaration that the acts and omissions described herein violated his rights under the Constitution and laws of the United States, and

27. A preliminary and permanent injunction ordering the Defendants to turn over all records requested in Plantiffs FOIA request.

28. Plantiff seeks a jury trial on all issues triable by jury.

29. Plaintiff also seeks recovery of all cost in this suit, and

30. Any additional relief this court deems just, proper, and equitable.

Dated: May 1, 2012

Respectfully submitted,
Abdul Love
M10108
PO Box 99
Pontiac, Ill
61764

## Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Abdul Love

To:

Federal District Court Washington D.C.
US District Court for the District Of Columbia
333 Constitution Ave. N.W.
Washington, D.C.20001



Love M10108
Correctional Ctr.
99
IL.  61764

PARCEL POST

April 12, 2012

Abdul Haue M10108
Pontiac Correctional Center
PO Box 99
Pontiac, Ill 61764

Michael Lemke
Assistant Warden of Operations
Pontiac Correctional Center
P.O. Box 99
Pontiac, Ill 61764

Dear Warden Lemke,

I know you are a busy man so I will try and keep this brief. There are a couple of issues I would like to bring to your attention in hopes that you may find some time to address them. The first has to do with my mail. I dont know whats going on but my magazines and legal mail keep coming up missing. In addition, my legal mail is being opened up before it gets to me. Just recently a letter to Judith Cramer, the Livingston County Circuit Clerk and a ~~letter~~ P9le requesting funds for filing fees be placed in the / with the letter

was lost; forcing me to resubmit all those items today. Second is the cellhouse temperature. I understand I'm not entitled to a specific temperature but for the last several nights the temperature has dropped below freezing. Even when the temperature isn't below freezing at night its still close to it. No efforts are being made to moderate the temperature. Lastly, the placement of the camera here in the East cellhouse. I'm not sure if you are aware of this but the camera is located right infront of the showers. I'm not positive but that might be a privacy violation when a person is showering. Anyway, these are just a few of the thing that were on my mind that I thought you should know. Again, I know your busy so I'll let you get back to work. Thank you for your time

Sincerely

Abdul Zone

April 12, 2012

Abdul Love M10108
Pontiac Correctional Center
P.O. Box 99
Pontiac, Il
61764

Marvin Reed
Assistant Warden of Programs
Pontiac Correctional Center
P.O. Box 99
Pontiac, Il
61764

Dear Warden Reed,

I know you are a busy man so I will try and keep this brief. There are a couple of issues I would like to bring to your attention in hopes that you may find some time to address them. The first has to do with my mail. I don't know what's going on but my magazines and legal mail keep coming up missing. In addition, my legal mail is being opened up before it gets to me. Just recently a letter to Judith Cremer

the Livingston County Circuit Clerk and a P'tle requesting funds for felony fees be placed in the letter was lost, forcing me to resubmit all these items today. Second is the cellhouse temperature. I understand I'm not entitled to a specific air temperature but for the last several days the night temperature has been below freezing. Even when its not below freezing at night its still close to it. No efforts have been made to moderate the temperature. Lastly, the placement of the camera here in the east cellhouse. I'm not sure if you know this but the camera is located right infront of the showers. I'm not sure but that might be a privacy violation when a persons showering. Anyway these are just a couple of things that were on my mind that I thought you should know. Again I know your busy so I'm going to let you get back to work. Thank you for your time

Sincerely,

[signature]

April 12, 2012

Abdul Love M10108
Pontiac Correctional Center
P O Box 99
Pontiac, Ill
61764

Randy Pfister
Acting Warden
Pontiac Correctional Center
P.O. Box 99
Pontiac, Ill
61764

Dear Warden Pfister,

I know you are a busy man so I will try and keep this brief. There are a couple of issues I would like to bring to your attention in hopes that you may find some time to address them. The first has to do with my mail. I don't know what's going on but my magazines and legal mail keep coming up missing. In addition, my legal mail is being opened up before it gets to me. Just recently

a letter to Judith Cremer, the Livingston County Circuit Clerk and a P9b requesting funds for felony fees be placed in the letter was lost, forcing me to resubmit all those items today. Second is the cellhouse temperature. I understand I'm not entitled to a specific air temperature but for the last several days the night time temperature has been below freezing. Even when it's not below freezing at night its still close to it. No efforts have been made to moderate the temperature. Lastly, the placement of the camera here in the East cellhouse I'm not sure if you know this but the camera is located right infront of the showers I'm not sure but that might be a right to privacy violation when a persons showering. Anyway these are just a couple of things that were on my mind that I wanted to let you know about. Again I know your busy so I'm going to let you get back to work. Thank you for your time

Sincerely,



UNITED STATES POSTAL INSPECTION SERVICE

CRIMINAL INVESTIGATIONS SERVICE CENTER

March 30, 2012

Լ|Լ||ıııı|||ıᴨᴨ|ᴨ||ıı||ıᴨᴨᴨ|||ıᴨ|||ıı||ı||ı||ıı|ı||ıı||ı||ıı|

ABDUL LOVE M10108
PONTIAC CORRECTIONAL FACILITY
PO BOX 99
PONTIAC, IL 61764-0099

Ref: C|GFB|013|S1299765|C1604421

Dear Abdul Love M10108:

Thank you for the information you provided this office against:

PONTIAC CORRECTIONAL FACILITY
PO BOX 99
PONTIAC, IL 61764-0099

A review of this matter indicates that your complaint would be best handled by:

USPS CONSUMER AFFAIRS GREAT LAKES AREA
CENTRAL ILLINOIS:  601, 603-605, 609, 613-617
6801 W 73RD ST
BEDFORD PARK, IL 60499-9631

Please be advised that your complaint has been forwarded to the address above for whatever action they deem appropriate.  Any future concerns relating to this matter should be directed to the address shown above.

Sincerely,

*Patricia S. Sweeney*

Patricia S. Sweeney, Manager

cc: USPS CONSUMER AFFAIRS GREAT LAKES AREA

# EXHIBIT

# A

12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF LAKE       )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS          )
                                         )
             -vs-                        )          GEN. NO. 05 CF 381
                                         )
ABDUL LOVE                               )

## MOTION FOR SUPPLEMENTAL DISCOVERY

Now comes Ian S. Kasper, Appointed counsel for the Defendant, Abdul Love, and moves this Honorable Court, pursuant to Supreme Court Rule 412, to order the State to tender the following additional discovery to the Defense, and in support thereof states as follows:

1.  The Defendant is charged with Unlawful Possession of a Controlled Substance with the Intent to Deliver.

2.  The defense has been trying to locate Silas Peppel (sp?), who is mentioned in the discovery tendered to the defense and the defense believes is a necessary impeachment witness regarding the police officers' statements and anticipated testimony, but does not have the resources to locate this individual. The defense is requesting that the State provide contact information and last known address and phone number information for this individual, to the best of their ability.

3.  The Defense believes that members of the Waukegan Police Department began an investigation and had contact with an informant, Silas Peppel(sp?), in this matter prior to the traffic stop of the defendant on October 5, 2005 at about 1:04am. Defense is requesting the following documents that are available to the Waukegan Police Department and/or the Lake County State's Attorney:

    a.   A log from LEADS listing the occurrence times, dates and names of people who accessed the defendant's Criminal records in the four weeks prior to and concurrent with the defendant's arrest.

    b.   Call records of October 4 and 5, 2005 from the cell phones in the possession of Waukegan Police Sergeant Chastain, Sergeant Cappelluti, Det. Tapia, Det. Ulloa, Det. Flores, Det. Reed, Det. Agallianos and Det. Navarro.

    c.   The defense is aware that Sergeant Cappelluti was demoted to the rank of Detective subsequent to the defendant's arrest, due to the Sergeant's unprofessional performance and is requesting a copy of this Detective's personnel records relevant to that demotion.

4.   This motion is not brought for purposes of impeding the swift administration of justice.

5.   To deny this motion will violate the Defendant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I of the Illinois Constitution.

WHEREFORE, the defendant requests this court to order the State to tender the requested information and records to the defendant.

Respectfully submitted,

Ian S. Kasper
Attorney for Defendant

Ian S. Kasper, P.C.
33 North County Street, Suite 501
Waukegan, IL 60085
ARDC 6244594
847-625-0555

# EXHIBIT

# B

12 1046

# FILED

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

STATE OF ILLINOIS )
                  ) SS
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS    )
                                    )
             vs               )      GENERAL NO.    05CF3811
                                      )
ABDUL LOVE                   )

### THE PEOPLE'S MOTION TO RECONSIDER
### RULING ON DEFENDANT'S MOTION FOR SUPPLEMENTAL DISCOVERY

    Now comes MICHAEL J. WALLER, State's Attorney, in and for the County of Lake, State

of Illinois, by and through Scott J. Hoffert, Assistant State's Attorney, and moves this Honorable

Court to reconsider its ruling granting the defendant's motion for supplemental discovery filed

April 29, 2009. In support of said motion, the People assert:

    On April 29, 2009, the defendant filed a motion for supplemental discovery requesting an

order that the State furnish certain information regarding an individual named Silas Peppel. The

defendant indicated a belief that that individual was a confidential informant for the Waukegan

Police Department and that the disclosure would allow the defendant to call Peppel as an

impeachment witness against the anticipated testimony of police officers in the trial of this cause.

Over the objection of the State, the court granted in part the defendant's motion and ordered the

State to seek out information regarding possible police contacts with Silas Peppel and to tender that

information, if any, to the court for in camera review and possible disclosure to the defense.

    Through its rulemaking authority, the Illinois Supreme Court has codified an informant

privilege:

        Disclosure of an informant's identity shall not be required where his identity is a
        prosecution secret and a failure to disclose will not infringe the constitutional rights of the

1

accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at hearing or trial. 188 Ill.2d R. 412(j)(ii)

When a defendant seeks disclosure of the identity of a confidential informant, each case must be decided on its own facts but the defendant bears the burden of demonstrating that the disclosure is necessary to prepare his defense. People v. Young, 372 IllApp.3d 626, 628 (4th District, 2007), People v Orsby, 286 Ill.App.3d 142, 147 (2nd District, 1996).

The court must balance the strong public policy reasons favoring the nondislosure of an informant against a defendant's need to prepare his defense. Orsby 286 Ill App.3d at 147. The policy favoring nondisclosure is based on a need to ensure the flow of information to the police, People v. Taylor, 269 Ill.App.3d 772, 778 (1st District, 1995), and to protect the safety of the informant. People v. Rivas, 302 Ill.App.3d 421, 436 (1st District, 1998).

In balancing the public policy against the defendant's need for disclosure, courts should look to certain relevant factors, which include but are not limited to the crime charged, possible defenses and the possible significance of the informant's testimony at trial. Taylor, 269 Ill App.3d at 778. The court should consider whether the request for disclosure relates to the question of guilt or innocence rather than to probable cause, whether the informant played an active role in the criminal act by participating in or witnessing the offense, whether the informant assisted in setting up its commission as opposed to being a mere tipster and whether it has been shown that the informant's safety might be jeopardized by the disclosure. Ibid. at 778-9. Disclosure is not required where the purpose of the disclosure is to attack probable cause, whether the probable cause is the basis of a search warrant, Young 372 Ill.App.3d at 628-9, or to impeach the motives of the police in a traffic stop, Orsby, 286 Ill.App.3d at 147-8. The privilege itself reflects a generalized concern for the safety of an informant but if the State can demonstrate a more particularized threat, that will impact the balancing test in favor of nondisclosure. People v. Bufford, 277 Ill App.3d

2

862, 866-7

The court has heard testimony from the defendant and several police officers in hearings in this matter and in hearings and the trial of the defendant's other pending case, Lake County case number 06CF160. Police officers including Sgt. Scott Chastain and Detective Dominic Cappalluti have testified as to the nature of the stop and arrest of the defendant, his statements (oral and written) and the evidence collected in this matter. The officers along with other members of the Waukegan Police Neighborhood Enforcement Team were working a detail on the night of October 5, 2005. The defendant was driving a vehicle that was stopped for traffic violations and was arrested on an outstanding warrant. The officers observed in the back of the defendant's vehicle what appeared to be a kilogram of cocaine protruding from a box; further investigation revealed close to three kilograms of cocaine. The defendant made admissions to the possession of the cocaine and to his intent to deliver it to another. The defendant also wrote a written statement. In his statements to police, the defendant indicated that an individual named Sylas had asked the defendant to provide cocaine and the defendant obtained the cocaine from an individual known to him as "G" There is no reference to the individual named Sylas in the People's discovery other than within the statements of the defendant; no individual named Silas or Sylas is listed on the State's list of witnesses to be called at trial There is no mention in the police reports to a confidential informant There was no search warrant or controlled buy involved in the case at bar; there was a traffic stop based on probable cause, an arrest, the recovery of a large amount of cocaine and then admissions by the defendant.

If the individual named Silas Peppel was a confidential informant and if the defendant was truthful in his assertion that Sylas asked him to procure cocaine, then Sylas assisted in setting up the commission of the offense. Every other factor, however, weighs in favor of nondisclosure. Sylas is not a witness that the State will call at trial. The defendant claims that Sylas will be an

3

impeachment witness rather than an occurrence witness; apparently even this impeachment would apply to the probable cause for the stop rather than the issue of guilt or innocence. There is no indication whatsoever that Sylas played an active role in the offense charged, possession of a controlled substance with the intent to deliver, as a participant or a witness. It is very clear that the safety of anyone who acted as a confidential informant in this matter would be jeopardized. The defendant is pending sentencing on a judgment of guilty following a bench trial of solicitation of murder for hire in 06CF160; in that matter, the defendant hired a purported assassin to murder two individuals, a police officer and a codefendant, in this very case where he now seeks the disclosure of a suspected confidential informant.

If Sylas Peppel was a confidential informant, the State should not be required to disclose that fact or any other information regarding him. If there was any confidential informant involved in this matter, the State should not be required to disclose his identity. The defendant has not met his burden that any such disclosure is necessary in light of the strong public policy against it.

WHEREFORE, the People request this Honorable Court grant the People's Motion to Reconsider the Court's Ruling granting the defendant's Motion for Supplemental Discovery and to enter an order denying the same.

Respectfully submitted,

Scott J. Hoffert
Assistant State's Attorney

4



12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

STATE OF ILLINOIS          )
COUNTY OF LAKE             )
              IN THE NINETEENTH JUDICIAL CIRCUIT COURT
                        LAKE COUNTY, ILLINOIS
PEOPLE OF THE STATE        )
OF ILLINOIS                )
vs                         )          Case No. 05 CF 3811
                           )
ABDUL LOVE                 )

## MOTION TO RECONSIDER

Now comes Silas Pepple, under subpoena as a witness, and hereby respectfully requests through ATTORNEY RALPH STRATHMANN that the court reconsider denial of the motion to quash the subpoena in the above-captioned matter. In support of the motion, Silas Pepple states as follows:

1.     Defendant, Abdul Love, is charged with Possession of a Controlled Substance with Intent to Deliver.   On June 4, 2009, defendant served a subpoena upon Silas Pepple commanding his appearance for the purpose of providing testimony at trial.

2.     Silas Pepple filed a motion to quash generally alleging that his anticipated testimony would be irrelevant and immaterial to the State's prosecution or defendant's defense, and that his appearance in court would jeopardize his and his family's safety. The court's denial of the motion to quash was based, in part, on a lack of an offer of proof as to Silas Pepple's anticipated testimony.

3.     In consideration of the strong policy reasons favoring secrecy and the safety of confidential informants, Silas Pepple is requesting to make an offer of proof by way of sealed affidavit detailing his participation and anticipated testimony.

4.     Based upon consideration of the information contained in the affidavit, Silas Pepple is hereby requesting that the court reconsider its ruling and quash the subpoena served on Silas Pepple.

                                          Ralph Strathmann ARDC#6199976
                                          Attorney for Silas Pepple

Ralph Strathmann ARDC#6199976
33 N. County Street #604
Waukegan, Illinois 60085
(847)244-0922 Fax (847)360-8191
raslaw456@gmail.net

# EXHIBIT
# D

12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CARBONDALE POLICE DEPARTMENT
INVESTIGATIONS SUPPLEMENT

DETECTIVE GLEASON
CASE#: C20050424008



## SUPPLEMENT

IN REFERENCE TO THE ABOVE CASE NUMBER, A FORGERY COMPLAINT. THE
SUSPECT, ROB COULSON PASSED SEVERAL TWENTY DOLLAR BILLS AT STIX BAR
517 SOUTH ILLINOIS AVE. THE TWENTY DOLLAR BILL WERE COUNTERFEIT.

ON 05/02/05, I, DETECTIVE GLEASON CONTACTED A ███████████. ████
WORKS AT STIX BAR.████TOLD ME THAT SHE ATTENDED A AFTER BAR CLOSING
PARTY AT COULSON'S RESIDENCE. SHE TOLD ME THAT COULSON WAS JOKING
AROUND ABOUT THE FAKE MONEY. SHE TOLD ME THAT SHE SAW COULSON BURN
SOME OF THE MONEY

████ TOLD ME THAT COULSON SHOWED HER THE FAKE MONEY AND TOLD HER
TO KEEP IT ON THE DOWN LOW.████TOLD ME THAT SHE WANTED TO REPORT
THE INCIDENT TO THE POLICE, BECAUSE OF THE EMPLOYEES HAVING TO PAY
BACK THE BAR WITH THEIR OWN MONEY.████ WROTE A VOLUNTARY WRITTEN
STATEMENT IN REGARDS TO THE INCIDENT.

ON 05/02/05 AT ABOUT 0150 HOURS, I , DETECTIVE GLEASON MET WITH COULSON
AT THE CARBONDALE POLICE DEPARTMENT. COULSON CAME TO THE POLICE
DEPARTMENT VOLUNTARILY.

I EXPLAINED TO COULSON THAT I WAS INVESTIGATING THE COUNTERFEIT
TWENTY DOLLAR BILLS THAT WERE PASSED AT STIX. COULSON TOLD ME THAT HE
UNDERSTOOD AND THAT HE WOULD COOPERATE WITH THE INVESTIGATION.

I TOLD COULSON THAT I BELIEVED THAT HE KNEW THE TWENTY DOLLAR BILLS
WERE FAKE. COULSON TOLD ME THAT HE DID IN FACT KNOW THAT THE BILLS
WERE FAKE. HE TOLD ME THAT HE WAS EXTREMELY INTOXICATED AND NOT IN
HIS RIGHT STATE OF MIND WHEN HE PASSED THE BILLS.

COULSON RELATED THE FOLLOWING TO ME:

ON 04/24/05 ABOUT 1400 HOURS HE MET WITH A DRINKING BUDDY THAT HE
KNEW ONLY AS "ROB". "ROB" SHOWED HIM A LOT OF MONEY. "ROB" TOLD
HIM THAT THE MONEY WAS FAKE. "ROB" ASKED HIM IF HE WOULD BUY THE
FAKE MONEY. HE TOLD "ROB" THAT HE DID NOT HAVE ANY MONEY. " ROB"

GAVE HIM $400.00 OF THE FAKE MONEY TO TRY OUT.

LATER, HE WENT TO STIX TO PARTY. HE DRANK ON HIS OWN MONEY UNTIL IT RAN OUT. AT THIS TIME HE WAS EXTREMELY INTOXICATED. HE USED THE FAKE MONEY THAT "ROB" GAVE HIM TO BUY DRINKS FOR HIMSELF AND SEVERAL OTHER PEOPLE.

HE THEN RETURNED HOME WHERE HE PARTIED SOME MORE. HE FELT MAD AT HIMSELF FOR PASSING THE FAKE MONEY. HE BURNED THE REMAINING BILLS AT THE PARTY.

HE LATER CAME TO THE POLICE DEPARTMENT TO TALK ABOUT THE FAKE MONEY. HE ALSO TURNED HIMSELF IN ON A WARRANT.

COULSON ADMITTED TO ME THAT THE MONEY HE PASSED WAS FAKE. HE TOLD ME THAT HE FEELS BAD, BECAUSE OF THE EMPLOYEES AT STIX. HE TOLD ME THAT HE HAD SEVERAL FRIENDS THAT WORK FOR STIX. COULSON TOLD ME THAT HE BELIEVED THAT HE USED OVER $300.00 OF THE FAKE MONEY TO PURCHASE ALCOHOL FOR HIMSELF AND FRIENDS. COULSON TOLD ME THAT HE DOES NOT HAVE ANY OF THE FAKE MONEY LEFT. COULSON DENIED MAKING THE FAKE MONEY.

COULSON COULD NOT PROVIDE ME WITH ANY OTHER INFORMATION ABOUT "ROB". HE TOLD ME THAT WHEN HE CAME INTO CONTACT WITH "ROB", HE WOULD CALL THE POLICE. HE TOLD ME THAT "ROB" FREQUENTS THE BARS WHEN THERE ARE DRINK SPECIALS.

COULSON WROTE A WRITTEN VOLUNTARY STATEMENT IN REGARDS TO HIS INVOLVEMENT ABOUT THE INCIDENT. COULSON LEFT THE POLICE DEPARTMENT.

I LATER MET WITH COULSON AT THE POLICE DEPARTMENT. COULSON TOLD ME THAT UNITED STATES SECRET SERVICE CAME TO HIS HOUSE AND QUESTIONED HIM. COULSON TOLD ME THAT AFTER THE SECRET SERVICE LEFT, HE CALLED HIS MOTHER. HE TOLD ME THAT AFTER SPEAKING WITH HIS MOTHER, HE WANTED TO PROVIDE ADDITIONAL INFORMATION.

COULSON TOLD ME THAT HE KNOWS THE PERSON WHO GAVE HIM THE COUNTERFEIT MONEY. HE TOLD ME THE PERSONS NAME IS NOT "ROB" LIKE HE REPORTED BEFORE. HE TOLD ME THE PERSONS NAME WAS "SILAS". HE TOLD ME THAT "SILAS" LIVES ON CAMPUS AT ABBOTT HALL. HE TOLD ME THAT HE DID NOT KNOW "SILAS" LAST NAME.

COULSON TOLD ME THAT "SILAS" MADE COUNTERFEIT MONEY ON HIS LAPTOP

COMPUTER. HE TOLD ME THAT "SILAS" MADE COUNTERFEIT MONEY AND USED IT AT "CAVE FEST". HE TOLD ME THAT "SILAS" PASSED THE COUNTERFEIT MONEY AND OBTAINED DRUGS WHILE AT "CAVE FEST".

COULSON TOLD ME THAT HE HAS SEEN "SILAS' PRODUCE A LARGE AMOUNT OF COUNTERFEIT MONEY. HE TOLD ME THAT HE KNOWS THIS BECAUSE HE HELPED "SILAS' AND A B/M HE KNOWS AS "MUHADI" CUT THE BILLS FROM THE PAPER AT "MUHADI'S" APARTMENT AT 511 SOUTH RAWLINGS ST #A210. COULSON TOLD ME THAT AFTER CUTTING THE BILLS, HE HELPED PACK THE COUNTERFEIT MONEY. HE TOLD ME THAT "MUHADI" WAS TAKING THE COUNTERFEIT MONEY TO CHICAGO TO SELL. HE TOLD ME THAT HE HELPED COUNT AND PACK THIRTY THOUSAND DOLLARS ($30,000) IN ONE HUNDRED DOLLARS BILLS. HE ALSO TOLD ME THAT "SILAS" MADE FIFTY (50) PAGES OF TWENTY DOLLAR BILLS. HE TOLD ME THAT "MUHADI" WAS TAKING THE COUNTERFEIT MONEY BY AMTRAK TRAIN. HE TOLD ME THAT "MUHADI" WAS GOING TO SELL THE MONEY FOR NINE THOUSAND DOLLARS ($9,000). COULSON TOLD ME HE DID NOT KNOW IF THE PLAN FAILED OR NOT. HE TOLD ME THAT AFTER HE GOT CAUGHT WITH THE COUNTERFEIT MONEY AND THE POLICE WERE INVOLVED. "SILAS" AND "MUHADI" WOULD NOT TALK TO HIM ABOUT THE COUNTERFEIT OPERATION.

COULSON TOLD ME THAT "SILAS" USED HIS LAPTOP TO MAKE THE COUNTERFEIT MONEY. HE TOLD ME THAT "SILAS' SHOWED HIM THE PROCESS. COULSON TOLD ME THAT "SILAS" WOULD SCAN A LEGITIMATE BILL IN HIGH DEFINITION. HE TOLD ME THAT THE DEFINITION WAS SO HIGH THAT IT WOULD TAKE ABOUT FIVE TO TEN MINUTES TO SCAN. HE TOLD ME THAT AFTER SCANNING THE BILL, "SILAS" WOULD THEN TRANSFER THE SCANNED IMAGE INTO A PHOTO SHOP SOFTWARE PROGRAM. HE TOLD ME THAT 'SILAS" WOULD THEN PRINT THE COUNTERFEIT MONEY.

COULSON TOLD ME THAT "SILAS" PURCHASED A PAPER CUTTER, PAPER, INK AND INK CARTRIDGES FROM OFFICE MAX IN CARBONDALE. COULSON TOLD ME THAT "SILAS" BURNT THE INK CARTRIDGES AND OTHER EVIDENCE ABOUT THE OPERATION WHEN HE HEARD THE POLICE WERE INVOLVED.

I OBTAINED INFORMATION ABOUT A SILAS E. PEEBLE ████████. PEEBLE RESIDED AT ABBOTT HALL ON CAMPUS PEEBLE WAS ARRESTED BY SOUTHERN ILLINOIS POLICE 02/28/05 FOR AGGRAVATED BATTERY. I WAS ABLE TO LOCATE A PHOTOGRAPH OF PEEBLE.

I SHOWED THE PHOTOGRAPH OF PEEBLE TO COULSON. COULSON TOLD ME THE PHOTOGRAPH WAS "SILAS". "MUHADI" WAS IDENTIFIED AS MUHADI ABDUL LOVE WHO RESIDES AT 511 SOUTH RAWLINGS APT A210.

ON 05/12/05, PEEBLE MET ME AT THE CARBONDALE POLICE DEPARTMENT. PEEBLE

CAME VOLUNTARILY. PEEBLE TOLD ME THAT HE HEARD THAT HE WAS IMPLICATED
IN THE COUNTERFEITING. PEEBLE TOLD ME THAT HE DID NOT MAKE THE MONEY.
HE TOLD ME THAT HE KNOWS WHO MAD THE FAKE MONEY. PEEBLE TOLD ME
THAT HE WANTED TO TALK TO THE SECRET SERVICE TO PROVIDE ANY
INFORMATION. HE TOLD ME THAT HE WANTS TO KNOW THE CIRCUMSTANCES
AND/OR REPERCUSSIONS OF HIS TESTIMONY. I TOLD PEEBLE THAT I HAD NO
INVOLVEMENT WITH THE ISSUANCE OF SENTENCES. I TOLD PEEBLE THAT THE
SECRET SERVICE WANTED HIS COMPUTER. PEEBLE DID NOT WANT TO GIVE HIS
COMPUTER TO THE SECRET SERVICE. PEEBLE TOLD ME THAT HE DOES WEB DESIGN
AND HE NEEDS HIS COMPUTER FOR WORK. PEEBLE TOLD ME THAT THERE IS
SOFTWARE ON HIS COMPUTER THAT COULD SCAN AND PRINT COUNTERFEIT
MONEY IF HE WISHED TO DO SO.

PEEBLE TOLD ME THAT HE WAS LEAVING CARBONDALE AND HEADING BACK
HOME TO MOUNT CARROLL ILLINOIS. PEEBLE LEFT HIS CELL PHONE NUMBER ██-
██-██. PEEBLE LEFT THE POLICE DEPARTMENT.

I CONTACTED PAUL FOSTER, UNITED STATES SECRET SERVICE AGENT. FOSTER
TOLD ME THAT HE WOULD TAKE OVER THE CASE AND INVESTIGATE IT. I PROVIDED
AGENT FOSTER WITH A COPY OF THE MATERIALS OF MY INVESTIGATION.

PLEASE PLACE THIS CASE AS INACTIVE, REFERRED TO THE UNITED STATES SECRET
SERVICE.

NOTHING FURTHER.

# EXHIBIT E

12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Freedom of Information Act Request

Petitioning Party: Abdul Mahadi Love
Responding Party. United States Secret Service
Set Number: One

Abdul Mahadi Love petitioner makes the following request pursuant to title 5 U.S.C § 552, you
are required to serve a written response to this request listed below, no later than 10 days
after the request is served upon you.

Definitions

1. The term "communication" means any transmission of words, thoughts, or information
between or among two or more persons, and including, but not limited to spoken words,
conversations, conferences, discussions, talks and reports, whether transmitted in person or
by any electronic device such as telephone, radio, electronic mail services or cell phone and
documents as defined below.

2. The term document(s) includes, but is not limited to, papers, photographs, films,
recordings, memorandum, charts, correspondence, diaries, logs, books, records, notes,
invoices, receipts, agreements, calender entries, envelopes, telephone messages, account
ledgers, all computer or electronically stored information and all other writings,
communications, and tangible things in the possession, custody or control of the responding
party.

3. The word "identify" when used in connection with a verbal communication(s) means to
state:
(a) The date of that communication (b) The identity of the person(s) who were parties to that
communication (c) The identity of the person(s) who were witnesses (other than party) to that
communication (d) Whether that communication was face-to-face and/or over the telephone,
and if face-to face, describes the location of that communication; and (e) the identity of any
documents which pertain to that communication.

4. The word "identify" when used in connection with a written communication means to state:
(a) The date of that communication if not otherwise noted on the document. (b) The identity of
the person(s) who were recipients of that communication if not otherwise noted on the
document; and (c) Whether that communication was in response to a prior face-to-face
communication, a telephone conversation, voice mail message, or another written document
and, (d) Produce any documents related to the written communication.

5. The word "identify" when used in reference to a natural person means to sate: (a) the
person's full name; (b) present (or last known) address; (c) present or last known occupation
or position, (d) name of present or last known occupation or position; (e) the nature of the
person's relationship (if any) with respondent.

6  The word "identify" when used in reference to a document means to state: (a) its date, (b)

its subject matter and substance (c) its author (d) its recipients (e) the type of document (f) if the document is no longer in your possession or subject to your control, then identify the present (or last known) custodian of the document and state whether the document. I ) is missing or lost II.) has been destroyed III.) has been transferred, voluntarily or involuntarily to others; or IV ) otherwise disposed of; and in each instance, explain the circumstances surrounding the authorization for the disposition thereof and state the date of approximate date thereof.

7. The word "identify" when used in reference to an entity which is not a natural person (eg, a corporation, partnership, association, etc), give: (a) its full name (b) present or last known address of its principle place of business; (c) address of any of its offices or facilities in Illinois (d) last known telephone number (e) Federal tax ID number, and (f) generally describe its principle business activity.

8. "All" means any and all and "any" likewise means any and all, unless the context requires otherwise

9. Whenever appropriate, the singular form of a word should be interpreted as the plural and vice versa.

10. "And" as well as "or" shall be construed either disjunctively or conjuctively as necessary to bring within their scope any responses which might otherwise be construed to be outside their scope.

11. "Person" or "Persons" shall be deemed to include both the singular and plural sand shall include natural persons, corporations, public corporations, partnerships, joint ventures, groups, associations or organizations or any other entity encompassed within the usual and customary meaning of this definition.

12. "Refer", "relate", or "relating to", means describing, touching upon, concerning, or to be legally, factually, or in any way connected, in whole or in part, to the matter discussed.

## Introduction

Petitioner, upon information and belief that agent, Paul Foster, of the United States Secret Service; Sgt  Chastain, Sgt. Cappelluti, Dets. Sopia, Ulloa, Flores, Reed, Agallianos and Novarro, of the Waukegan Police Dept.; Michael J. Waller, States Attorney for Lake County, Illinois; Judge Fred Foreman, of the nineteenth judicial district of Lake County, Illinois; Silas Peppel, and other, yet to be disclosed, governmental actors, Jane and John Doe's have manifestly engaged in a "scheme or artifice" to imprison petitioner and silence objections to criminal misconduct and constitutional violations thereby, among other wrongdoing, obstructing justice and the administration of justice

## Background

On or about October 5, 2005, in the county of Lake State of Illinois, petitioner was stopped at the B.P. Amoco at 2930 Belvidere Rd. in Waukegan, for an alleged traffic stop. During the traffic stop, it was discovered petitioner had an outstanding arrest warrant. Petitioner was placed under arrest and the vehicle he was driving was searched. During the search of the vehicle, approximately 3,000 grams of cocaine was discovered, a violation under 720 ILL. Rev. Stat.; 570/401 (a)(2)(D).

On or about November 9, 2005, Robin DeMars Goodstein, of the Lake County Public Defenders Office filed a motion to Preserve and Produce all videotapes of the allege traffic stop. In addition, a subpoena was issued to the manager of the B.P. Amoco, commanding him to turn over all videotapes taken at the gas station on October 5, 2005, between 12:30 am and 1:30 am.

On or about November 15, 2005, an order was signed by Judge Fred Foreman commanding the State to fulfill the requirements outlined in the preserve and produce motion On or about April 12, 2007, petitioners attorney, Scott Spetalli, filed a motion to Compel Discovery or in the Alternative Impost Sanctions; the State had yet to comply with the Preserve and Produce order. During said motion hearing, Assistant States Attorney, Amy Meister-Falbe stated that she just didn't go get the videotapes from the B.P. Amoco. After making said statements in open court, Judge Foreman refused to impose any sanctions, stating that if the petitioner believes the tapes are exculpatory evidence, then he should go and find them.

In June of 2008, petitioner began having ex parte communication with Judge Foreman. In letters dated June 6, July 4, August 13, and November 24, 2008, petitioner discusses Silas Peppel and his possible involvement in petitioners criminal case as an informant.

On or about May 12, 2009, a hearing was held for petitioners motion of Supplemental Discovery. In said motion, petitioners attorney stated that Defense believes that members of the Waukegan Police Dept. began an investigation and had contact with an informant, Silas Peppel, in this matter prior to the traffic stop of the petitioner on October 5, 2005, and asked for the following: A.) A log from LEADS listing occurrence times, dates, and names of people who accessed petitioners criminal records four weeks prior to and concurrent with petitioners arrest. B.) Call records from October 4 & 5, 2005 from the cell phones in possession of Waukegan Police Sgts. Chastain, Cappelluti, and Dets. Topia, Ulloa, Flores, Reed, Agallianos and Novarro. C ) The personnel file for former Sgt. Cappelluti. D.) Contact information for the individual name Silas Peppel. Petitioners motion for Supplemental Discovery was granted and

the Court was to conduct an in camera inspection of petitioners LEADS records

On or about May 19, 2009, the prosecutor filed a motion to reconsider petitioners motion for Supplemental Discovery.

On or about May 27, 2009, the prosecutions motion as heard and granted with stipulation that if the petitioner could prove that Silas Peppel played a more active role than just driving petitioner to Waukegan, the petitioner would be granted access to the information in his motion for Supplemental Discovery.

On or about June 16, 2009, a subpoena was served on Silas Peppel. Additionally, a subpoena was issued to Verizon, commanding them to turn over the call records from telephone number (815) 238-5923. This was the number issued to Silas Peppel and in use on October 4 & 5, 2005. Upon being issued the above-mentioned subpoena, Mr. Peppel hired attorney Ralph Strathmann to get said subpoenas quashed

On or about June 16, 2009, a motion to quash subpoena was filed by Mr. Strathmann.

On or about July 7, 2009, Judge Foreman ruled that he was not quashing the subpoenas and Mr. Peppel was commanded to appear on the July 13, 2009 trial date.

On or about July 9, 2009, Mr. Strathmann filed a motion to reconsider the judges earlier ruling on the motion to quash subpoena. During the motion to reconsider, Mr Strathmann presented an affidavit from his client, Mr. Peppel, that he asked the court to review in camera. In addition, Assistant States Attorney, Scott Hofer, submitted a memorandum from the Waukegan Police Dept. that asked the court to review in camera in conjunction with Mr. Peppel's affidavit. Both requests were subsequently granted.

On or about July 10, 2009, after reviewing both the affidavit and memorandum, Judge Foreman ruled that because of his fear of Mr. Peppel's safety, he was quashing the subpoena commanding Mr. Peppel to appear on the July 13, 2009 trial call, and the subpoena for his phone records. In addition, Judge Foreman stated that the State did not have to disclose their informant. Both the affidavit and memorandum were placed under seal.

On July 15, 2009, following a stipulated bench trial, the petitioner was found guilty of possession of a controlled substance with intent to deliver.

On or about October 2, 2009, petitioner filed a motion for De novo review of petitioners motion for supplemental discovery, with supporting case law, alleging that Judge Foreman's ruling on said motion was erroneous. (See motion and case law in appendix.) Judge Foreman refused to hear petitioners motion.

On November 23, 2009, petitioner was sentenced to 40 years in the Illinois Dept. of Corrections

On or about November 23, 2009, petitioner came into possession of a redacted police report from the Carbondale, Illinois Police Dept. Case #20050424008, which was in reference to the use of counterfeit money/forgery by an individual named Robert Coulson III. Page 3 paragraph 2 of Det Gleason's supplemental report is where petitioner believes he was implicated in said counterfeiting scheme. (See Det. Gleason's supplemental report in

appendix.)

Upon information and belief, petitioner was singled out and maliciously attacked for his alleged involvement in a scheme to counterfeit U.S. currency. Upon information and belief, Silas Peppel and the other individuals named in the introduction, engaged in this malicious artifice in an effort to cover up Silas Peppel counterfeiting in excess of $35,000 in U.S. currency

## Information Requested

1.  Identify any and all documents and communications agent Paul Foster had with the following relating to petitioner and his alleged involvement in counterfeiting U.S. currency discovered out of independent investigations and/or as a result of case #20050424008 originating out of Carbondale, Illinois. A). Lake County, Illinois States Attorneys Office  B ) Waukegan Police Dept. C.) Silas Peppel. D.) Lake County Illinois Sheriffs Dept. E ) Sgt Chastain. F.) Sgt. Cappelluti. G.) Illinois State Police. H.) Michael J. Waller. I.) Carbondale, Illinois Police Dept. J.) U.S. Treasury Dept. K.) The F.B.I. L.) Unknown Jane & John Doe's. M.) Unknown governmental agencies.

2.  Identify any and all documents and communications relating to case #20050424008 originating out of Carbondale, Illinois, and any subsequent documents or communications from any and all other investigations that came about because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

3.  Identify any and all documents and communications agent Paul Foster or any other agent under his authority or on his behalf had with any member of the judicial branch, including but not limited to the U.S. Attorney General, U.S. Attorneys or Assistant U.S. Attorneys; State Attorney Generals, Assistant States Attorney Generals; State Attorneys, Assistant States Attorneys. Public Defenders or Assistant Public Defenders from any district of any State that comprises the United States about sentence recommendations, promises or deals for any person found in possession of counterfeit U.S. currency because of direct involvement or other investigations that came about because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

4.  Identify any and all documents and communications about Silas Peppels involvement in petitioners criminal case/conviction in Lake County Illinois because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

5.  Identify any and all documents and communications in any other criminal matters Silas Peppel played the role of an informant/cooperating witness because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

6.  Identify any and all documents and communications pertain to any promises, deals or sentencing recommendations for Silas Peppel for playing the role in an informant/cooperating witness in other criminal cases to reduce the impact of his involvement in or in relation to case #20050424008 originating out of Carbondale, Illinois.

7   Identify any and all documents and communications relating to petitioner and his alleged involvement in counterfeiting U.S. currency because of or in relation to case #20050424008

originating out of Carbondale, Illinois.

8   Identify any and all documents and communications for Local, State, National and International law enforcement agencies about counterfeit U.S. currency because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

9.  Identify any and all documents and communications from banks, credit unions, businesses, and other financial institutions that reported counterfeit money because of or in relation to case #20050424008 originating out of Carbondale, Illinois

10.  Identify any and all documents and communications retrieved off of the computer(s) of Silas Peppel because of or in relation to case #20050424008 originating out of Carbondale, Illinois.

Respectfully submitted,

# EXHIBIT
# F

12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information Act and Privacy Act Branch
Communications Center
245 Murray Lane, SW, Building T-5
Washington, D.C. 20223

Date:   DEC 2 0

Abdul Love M10108
Menard Correctional Center
P.O. Box 711
Menard, IL 62259

File Number:   20100679

Dear Requester:

This is the final response to your Freedom of Information Act/Privacy Acts (FOIA/PA) request
originally received by the United States Secret Service (USSS) on August 25, 2010, for information
pertaining to yourself; specifically all documents relating to a counterfeit sheme in Carbondale, IL.
In addition, our office received a letter from you on October 14, 2010.

 In response to your request, the USSS has conducted a reasonable search for responsive records. It
appears, from a review of USSS main indices, that there are no records pertaining to your request
that are referenced in these indices. Enclosed is a copy of your original request.

Alternatively, if you deem our decision an adverse determination, you may exercise your appeal
rights. Should you wish to file an administrative appeal, your appeal should be made in writing and
received within sixty (60) days of the date of this letter, by writing to:  Freedom of Information
Appeal, Deputy Director, U.S. Secret Service, Communications Center, 245 Murray Lane, S.W.,
Building T-5, Washington, D.C. 20223. If you choose to file an administrative appeal, please
explain the basis of your appeal and reference the case number listed above.

Sincerely,

Craig W. Ulmer
Special Agent In Charge
Freedom of Information Act & Privacy Act Officer

# EXHIBIT

# G

12 1046

**FILED**

JUN 2 6 2012

**Clerk, U.S. District & Bankruptcy**
**Courts for the District of Columbia**



U.S. Department of Homeland Security
UNITED STATES SECRET SERVICE

March 18, 2011

Abdul M. Love – M10108
Menard Correctional Center
P.O. Box 711
Menard, IL 62259

      Re:    Freedom of Information Act appeal, File No. 20100679

Dear Mr. Love:

      Reference is made to your undated appeal letter which was received by the United States Secret Service (Secret Service) on February 16, 2011. Through your letter you appeal the December 20, 2010 determination of Special Agent in Charge (SAIC) Craig Ulmer, Secret Service Freedom of Information and Privacy Acts Officer, finding that the Secret Service maintains no records responsive to the above referenced Freedom of Information and Privacy Acts request.

      The search for records responsive to your request has been reviewed. Based on this review, it has been determined that a reasonable search was conducted for responsive records and that the search produced no records concerning your Freedom of Information and Privacy Act request.

      Under federal law we are required to advise you that any decision on appeal, including a finding of no record, is subject to judicial review in the District Court in the district where the complainant resides, has a principal place of business, or in which the agency records are situated, or in the District of Columbia.

                                      Sincerely,

                                        Keith L. Prewitt
                                        Deputy Director



12 1046

**FILED**

JUN 2 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Friday, July 4, 2008

Abdul Mahadi Love
C/O Lake County Jail
P.O. Box 38
Waukegan, Il, 60079

The Honorable Fred Foreman
18 N. County St.
Courtroom 204
Waukegan, Il, 60085

Dear Judge Foreman,

I pray that you had a very enjoyable 4th of July weekend. Once again I'm writing you to address a few issues. Like always I know you are extremely busy so I will try to keep it brief. The first issue has to deal with the videotapes you ordered preserved and produced.

On the last court date you asked a question that had to pertain to what would the videotapes show. I know this case has been going on a long time but I know that the topic has never came up. The videotapes would show what "truly" transpired that evening.

I was never pulled over for a traffic stop. That's what the officers used as an excuse to search the vehicle. The police officers followed me from the Buckingham Apartments. So that whole spill about traveling northbound on Greenbay, observing the vehicle traveling at a high rate of speed and having tented windows is a lie.

It is true that the windows were tinted but it was like 70° that night and I had all the windows down. While trailing me the police pulled into the first entrance of the BP gas station while I pulled into the second entrance. Now you should ask yourself why would these officers who have all this experience in law enforcement pull into a gas station if they were planning on stopping me in the first place?

The only logical assumption to make is that either they already knew that I was going to the gas station or I had signaled that I was turning into the gas station in the first place. The videotapes would show that the officers stopped at the pumps as if they were coming to gas up there cars.

It was then that they turned on their lights, pulled up behind the car and informed me that they were robberies in the area. Another thing that doesn't make any since is the box that the drugs were found in. The crime lab came back with usable fingerprints, yet they do no belong to my co-defendant Michael Nelson or myself. So who do they belong to?

We have asked the state to try and establish who they belong to but have heard nothing since said request was made. Please keep in mind that during the motion to suppress the officers testified that the back windows were rolled up so it was hard to see this box that they allege was open and what appeared to be a brick of cocaine hanging out.

The truth of the matter is that the box was closed and since there was no dog called to the scene to check the car what was the officers' probable cause for opening the box? And yes it was the officers who opened said box. "If" we had those videotapes it would have shown that the box was closed when the officers pulled it out of the car. "If" we had those videotapes it would have shown that the officers' pulled into the gas station before I did, with no intentions to make any traffic stop. "If" we had those videotapes it would have shown that the windows were down in the car; so the testimony the offices give under oath at the motion to suppress hearing in the drug case would be shown to be a lie.

This is why I'm so vehement about finding that tape. That tape essentially backs up my observation of the events that happened that night. In addition, another name keeps coming up that no one has done anything to ascertain, Silas Pepple. His name is mentioned several times in the motion to suppress hearing for the drug case.

"If" we had those videotapes it would show him too. Silas drove from Champaign to Waukegan. At that time he was attending Parkland Community College. I had meet Silas when he was attending school at S.I.U. After the arrest I had a friend look up his address in the S.I U. student directory.

They came up with 223 E. Lincoln Ave. Mt. Carroll, Illinois, 61053. I sent him a Christmas card to this address and it was returned to sender with a postage sticker with his new address on it, 1028 E. Kerr Ave. Apt 108, Urbana, Illinois 61802-9128. I know that he was in contact with the police or some other law enforcement agency.

I know if I was given the opportunity to cross-reference his old cell phone number (815) 238-5923 against the records of the other officers I am positive I can prove my point. I have also sent you the actual postal sticker that I received when I mailed that Christmas card to him back in December of 06.

I had a friend go online a few weeks ago and try to find Silas. I have found out that he is currently attending Eastern Illinois University and that his email address is sepeppel @eiu.edu. He was also present at a Coles County city council meeting in April of 2008. From the minutes of that meeting it appears that he is still residing at the address above.

Lastly your honor, I would like to talk about a statement that Mr. Hofer made during the motion to suppress hearing in the solicitation case. During Mr. Hofer's questioning of me he stated that Mr. Nelson is a confidential informant. I know he said it because my retort to that statement was, "I was not aware he was a confidential informant for the Waukegan police."

I find it a little convenient that a confidential informant was at the location of a "traffic stop" where 2 ½ kilos were found in the vehicle. According to police the drugs were in plane view yet my co-defendants nor my fingerprints were found on the box or the drugs. Individually when you look at all these elements it may even be plausible, but looking at the totality of the case something just doesn't sound right.

Like always your honor I appreciate you taking the time out of your busy schedule to look over this letter; you have a good day and I'll see you on July 15th.


Sincerely,


Abdul Mahadi Love

In The United States District Court
District of Columbia

Abdul Love
            plaintiff
        vs                              No:
The United States Secret Service
Keith Prewitt
Craig Ulmer
            defendants

                Motion to Unseal Documents

    Now comes the plaintiff, Abdul Love, pro se
moves this Honorable court for an order to
unseal documents.

1. On July 15, 2009, plaintiff was found guilty of
unlawful possession of controlled substance with
intent to deliver, in violation of 720 ILCS 570/
140(a)(2)(D) and was sentenced to (15) years in
the Department of Corrections.

2. On June 4, 2009, plaintiff served a subpoena
on the States confidential informant Silas Peppel
commanding his appearance at plaintiff's

July 13, 2009 trial.

3. On July 7, 2009, a hearing was held on Mr. Pepples motion to quash subpoena. Said motion was denied.

4. On July 9, 2009, a hearing to reconsider quashing the subpoena was held. During said hearing an affidavit detailing Mr. Pepples participation and anticipated testimony in plaintiffs drug arrest was submitted. (See exhibit C, in complaint).

5. In addition, Assistant States Attorney Scott Hoppert, submitted a memorandum from the Waukegan Police Department in conjunction with Mr. Pepples affidavit.

6. Each document was reviewed incamera and subsequently placed under seal.

7. Plaintiff believes both documents are essential to the complaint currently infront of the court.

Wherefore, Plaintiff prays that this Court enter an order unsealing the affidavit and memorandum submitted on July 9, 2009 in case 05 C7 3811, out of the Nineteenth Judicial Circuit, Lake County. Illinois or in the alternative review the documents in camera

Respectfully submitted.

Abdul Love

Abdul Love M10108