UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
ABDUL LOVE,                   )
                              )
            Plaintiff,        )
       v.                     )   Civil Action No. 12-1046 (KBJ)
                              )
UNITED STATES DEPARTMENT OF   )
HOMELAND SECURITY,            )
                              )
            Defendant.        )
_____ )
```

## **MEMORANDUM OPINION**

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Homeland Security ("DHS"), seeking records maintained by the United States Secret Service ("Secret Service" or "Agency"), a component of the DHS. This matter is before the Court on Defendant's Motion for Summary Judgment [ECF No. 17]. For the reasons discussed below, the motion will be GRANTED.

## I. BACKGROUND

Plaintiff was arrested on October 5, 2005, in Waukegan, Illinois, and was charged with possession with intent to deliver cocaine. (Compl. ¶ 6.)[1] According to the Waukegan police, officers had observed Plaintiff's vehicle speeding, and after stopping Plaintiff's car, the officers spotted what was later determined to be approximately two and a half kilograms of cocaine in plain view. (Compl., Ex. B, "Motion to Reconsider

---

[1] Two paragraphs in the complaint are designated number 6; this reference is to the second paragraph 6.

Ruling on Def.'s Mot. For Supp. Discovery" at 3; Ex. H, "Pl.'s Letter to the Honorable Fred Foreman dated July 4, 2008" at 1-2.)

During the pretrial process, Plaintiff vigorously disputed the officers' account. (Compl., Ex. H, at 1.) He maintained that he had not committed any traffic violations; rather, the police had specifically targeted him for a warrantless vehicle search based on information that one of Plaintiff's acquaintances, Silas Peppel, most likely had given to them prior to the traffic stop. (*Id.*; Compl., Ex. A, "Motion for Supp. Discovery," at 1.) Through discovery and by subpoena, Plaintiff sought to prove that Peppel was a police informant who had not only alerted officers to the presence of drugs in Plaintiff's vehicle, but had set Plaintiff up to commit the drug offense in order to mitigate Peppel's own punishment for a counterfeiting ring in which both Peppel and Plaintiff had previously been implicated. (Compl. ¶¶ 7, 12; *see also* Compl., Ex. D, "Carbondale Police Department Investigations Supplement" at 4 (page number designated by the Court); Ex. H, at 1-2.)[2] Ultimately, Plaintiff's pretrial requests and arguments were unavailing; he was convicted of the drug offense on July 15, 2009. (Compl. ¶ 11). But presumably to prove his theory right, Plaintiff continued his quest to obtain law enforcement records regarding the circumstances surrounding his narcotics arrest. (*See* Compl., Ex. H, at 2 ("I know that [Peppel] was in contact with the police or some other law enforcement agency. I know that if I was given the opportunity to cross-reference his old cell phone number . . . against the records of the other officers[,] I am positive I can prove my point.")

---

[2] Plaintiff filed a motion for discovery of information regarding Peppel prior to trial (Compl. ¶ 7; *id.*, Ex. A, "Motion for Supp. Discovery"), but the State objected, asserting that "[t]here is no reference to the individual names Sylas in the People's discovery . . .; no individual named Silas or Sylas is listed on the State's list of witnesses to be called at trial[,]" and "[t]here is no mention in the police reports of a confidential informant." (*Id.*, Ex. B, at 3.) Plaintiff also subpoenaed Peppel to testify at his criminal trial, but the trial court purportedly quashed the subpoena after *in camera* review of an affidavit that Peppel submitted under seal as well as a sealed memorandum from the Waukegan police department. (Compl. ¶¶ 9-11.)

2

### A. *Plaintiff's Records Requests*

On November 23, 2009, Plaintiff obtained a report dated May 13, 2005, from the Carbondale, Illinois Police Department. (Compl. ¶ 12; *see also id.*, Ex. D.)[3] The report detailed a Carbondale police investigation of a local counterfeiting operation, designated case # 20050424008, in which Peppel and Plaintiff were both identified. (Compl. Ex. D., at 3.) The report states that investigators interviewed Peppel and that, during the interview, Peppel indicated "that he wanted to talk to the Secret Service." (*Id.*) The investigating Carbondale police officer concluded the report by stating: "I contacted Paul Foster, United States Secret Service Agent. Foster told me that he would take over the case and investigate it. *I provided Agent Foster with a copy of the materials of my investigation.*" (*Id.* at 4 (emphasis added).)

On May 18, 2010, Plaintiff submitted to the Secret Service the FOIA request that is at issue in the instant case. (Compl., Ex. E, "Freedom of Information Act Request"; *see also* Def.'s Mem of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem"), "Decl. of Alvin T. Smith" ("Smith Decl.") ¶ 5.)[4] The introduction to Plaintiff's FOIA request read:

> Petitioner, upon information and belief that agent, Paul Foster, of the United States Secret Service; Sgt[.] Chastain, Sgt. Cappelluti, Dets. Sopia, Ulloa, Flores, Reed, Agallianos and Novarro, of the Waukegan Police Dept.; Michael J. Waller, State[']s Attorney for Lake County, Illinois; Judge

---

[3] The report was written nearly five months prior to Plaintiff's arrest for the drug trafficking offense.
[4] The undated FOIA request that is attached to the Complaint as Exhibit E is presumably the request Plaintiff submitted to the Secret Service on May 18, 2010. According to Alvin T. Smith, Deputy Director of the United States Secret Service, the Secret Service received this request on August 25, 2010, "and its supporting documentation appeared to be in response to its prior request for additional information regarding the plaintiff's earlier FOI/PA requests . . . [which] had been administratively closed after the information requested from Plaintiff by the [Secret Service] was not timely provided." (Smith Decl. ¶ 5; *see id.*, Ex. A, "Letter from Craig W. Ulmer, Special Agent in Charge, Freedom of Information & Privacy Acts Officer, U.S. Secret Service, dated April 23, 2010," at 1.) Upon receipt of the request via facsimile on August 25, 2010, "the [Secret Service] assigned [it] a new file number, 20100679 – the file number giving rise to the instant litigation." (Smith Decl. ¶ 5; *see id.*, Ex. B "Letter from Craig W. Ulmer dated September 9, 2010," at 1.)

> Fred Foreman, of the nineteenth judicial district of Lake County, Illinois; Silas Peppel, and other, yet to be disclosed, governmental actors, Jane and John Doe's have manifestly engaged in a "scheme or artifice" to imprison petitioner and silence objections to criminal misconduct and constitutional violations thereby, among other wrongdoing, obstructing justice and the administration of justice[.]

(Compl., Ex. E, at 3 (page number designated by the Court).) The request generally asked for "all information or arrest that resulted from information obtained as a result of the Carbondale, Illinois police report." (Compl. ¶ 13; *see generally id.*, Ex. E.) It also sought specific items, including any documents that the Secret Service maintained "relating to [Plaintiff] and his alleged involvement in counterfeiting U.S. currency discovered out of independent investigations and/or as a result of case #20050424008 originating out of Carbondale, Illinois . . . ," as well as information "about Silas Peppel[']s involvement in [Plaintiff's] criminal case/conviction in Lake County[,] Illinois because of or in relation to case #20050424008 originating out of Carbondale, Illinois." (*Id.*, Ex. E, at 5.)

### B. *The Secret Service's Search for Responsive Records*

The Secret Service received Plaintiff's FOIA request via facsimile on August 25, 2010. (Def.'s Mem. at 4; Smith Decl. ¶ 4.) According to Deputy Director Alvin T. Smith ("Declarant"), the Secret Service assigned Plaintiff's FOIA request to the Criminal Investigation Division ("CID"), which "is the division . . . that plans, reviews, and coordinates domestic and international criminal investigations, such as those involving counterfeiting of [U.S. currency]. " (*Id.* ¶ 13.) The CID searched the Secret Service Common Index ("CI") with respect to Plaintiff's request, and in so doing, "perform[ed] computerized searches of information collected in [five] Agency databases: [1]the Master Central Index ('MCI'), [2]the Protective Research Information System Management ('PRISM'), [3] the Master Personnel System ('MPS'), [4] the

4

White House Pass Holders and Tradesman ('WV') database, and [5] the Event Name Check ('EVNAME') system." (*Id.* ¶ 14.) Declarant explains that MCI "is an online computer system used by Secret Service field offices, protective divisions, and headquarters offices [and] is the central record keeping system for information in the investigative and administrative files maintained by the Secret Service." (*Id.* ¶ 15.) "Information concerning individuals about whom the Secret Service maintains records is indexed in the MCI by name, social security number, and/or date of birth." (*Id.*) PRISM "is the Agency's database for protective intelligence data." (*Id.* ¶ 16.) MPS "contains organizational and personnel data." (*Id.*) WV "contains information related to individuals with or seeking access to the White House Complex." (*Id.*) Lastly, EVNAM "permits the Agency to determine if it has queried other internal and external databases such as the MCI, PRISM, the National Crime Information Center, and the Interstate Identification Index for a specific individual in the last thirty (30) days." (*Id.*)[5]

In regard to Plaintiff's FOIA request, Secret Service staff first searched the CI using Plaintiff's name as a search term (*id.* ¶ 14) because "[i]nformation provided by Plaintiff indicated that he believed that the Secret Service had responsive records because he had been implicated in an alleged counterfeiting scheme that was referred to the Secret Service for further investigation by a local law enforcement agency in 2005" (*id.* ¶ 11). That search "failed to identify any case files concerning Plaintiff or his involvement in any alleged counterfeiting scheme." (*Id.* ¶ 18.)

---

[5] According to Declarant, "[i]f the Secret Service maintains records on a particular individual involved in a criminal investigation" in any of its databases, "a search of that individual's name and/or personal identifiers in the CI should result in a list of the file number(s) for the investigative or administrative file(s) associated with that individual's name or other personal identifiers." (Smith Decl. ¶ 17.) Therefore, Declarant avers, "if the [Secret Service] maintained records on Plaintiff regarding his alleged involvement in a counterfeiting scheme, a search of the CI should identify the responsive . . . records." (*Id.*)

On September 20, 2010, the Secret Service informed Plaintiff by letter that its initial CI search using his name as a search term yielded no records. (*Id.* ¶ 6; *see id.*, Ex. C, "Letter from Craig W. Ulmer dated Sept. 20, 2010," at 1.) At the Secret Service's invitation to "provide more specific information concerning when, where, or why [he believed he had] come to the attention of, or in contact with the Secret Service so as to have resulted in the generation of a record . . . ," (*id.*), Plaintiff supplemented his request.[6] On December 20, 2010, the Secret Service informed Plaintiff by letter that the Secret Service's search of its main indices yielded no responsive records and advised him of his right to an administrative appeal. (*Id.*, Ex. E, "Letter from Craig W. Ulmer dated Dec. 20, 2010.")

Plaintiff administratively appealed the Secret Service's initial determination on February 16, 2011. (Smith Decl. ¶ 9; *see id.*, Ex. F., "Pl.'s FOIA Appeal.") In response to the appeal, the Secret Service took three further steps: first, the agency conducted a second CI search. (Smith Decl. ¶ 19.) Secret Service staff queried the CI for Plaintiff's name, date of birth, social security number, and for "the names of the alleged informer and counterfeiter," yet "[n]o responsive records were identified." (*Id.*) Second, "the Secret Service sent Plaintiff's initial request and appeal to the Resident Agent in Charge" of the Agency's Springfield, Illinois office. (*Id.* ¶ 20.) Both the Resident Agent in Charge and the Administrative Officer "manually reviewed the office's investigative files" (*id.* ¶ 21) and no records pertaining to Plaintiff or any other aspect of his specific request for information were found. (*Id.* ¶ 22.) Third, the Secret Service contacted the agent to whom the Carbondale police purportedly had referred the alleged counterfeiting scheme. (*Id.* ¶ 23.) The agent reported "that he was not personally maintaining any material concerning investigations he conducted while reporting to the

---

[6] In a letter dated September 23, 2010, Plaintiff maintained that Peppel "was working with [Secret Service] Agent Paul Foster, [the] Waukegan police and other yet to be disclosed law enforcement agencies in order to soften the impact of his involvement" in counterfeiting activity. (Smith Decl., Ex. D, "Letter to Letita Payne from Pl. dated Sept. 23, 2010," at 3-5.)

Springfield . . . office." (Id.) On March 18, 2011, the Secret Service wrote to Plaintiff to inform him that the administrative appeal process had confirmed the Secret Service's initial determination that no responsive records could be located. (Smith Decl., Ex. G, "Letter from Keith L. Prewitt, Deputy Director, Secret Service, dated Mar. 18, 2011.")

On June 26, 2012, after the conclusion of the Secret Service's administrative appeal process, Plaintiff filed the instant civil action. (Compl. ¶ 1.)[7] Plaintiff demands injunctive relief in the form of a court order requiring "the [d]efendants to turn over all records requested" (*id.* ¶ 27) and "recovery of all cost[s] in this suit" (*id.* ¶ 29).[8]

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (collecting cases).[9] The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. Dep't of*

---

[7] The Clerk of Court received Plaintiff's complaint and application to proceed *in forma pauperis* on June 4, 2012. His application was granted on June 21, 2012, and the Clerk officially entered both documents on the Court's electronic docket on June 26, 2012.

[8] Plaintiff also demands "a declaration that the [Secret Service] violated his rights under the Constitution . . . of the United States," (Compl. ¶ 26), but that request is not viable in this context. The FOIA "provides requesters with the potential for injunctive relief only, either to enjoin the withholding of documents or to compel production of agency records." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) (citation omitted).

[9] The plaintiff's demand for a jury trial (Compl. ¶ 28) is denied. "Summary judgment is the procedural vehicle by which FOIA cases typically are resolved," *Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 80 (D.D.C. 2010) (citation omitted), and there is no reason why this case cannot be resolved on summary judgment. *See Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 189 n.1 (D.D.C. 2010).

7

*Justice,* 705 F.2d 1344, 1350 (D.C. Cir. 1983). To prevail in a FOIA case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Founding Church of Scientology of Wash., D.C.,* 610 F.2d 824, 837 (D.C. Cir. 1979) (quoting *Nat'l Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C. Cir. 1973)).

"When, as here, responsive records are not located, an agency is entitled to summary judgment if it establishes 'beyond material doubt [ ] that it conducted a search reasonably calculated to uncover all relevant documents.'" *Blunt-Bey v. U.S. Dep't of Justice,* 612 F. Supp. 2d 72, 74 (D.D.C. 2009) (quoting *Weisberg,* 705 F.2d at 1351); *see Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (stating that an agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents"). To this end, "the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations, internal quotation marks and brackets omitted); *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (stating that affidavits or declarations must describe "what records were searched, by whom, and through what processes"). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982).

If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). However, "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dep't of Justice,* 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citations omitted); *see Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) ("The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable.").

### B. Analysis

Plaintiff opposes Defendant's summary judgment motion on the ground that "questions surrounding the steps taken by the Secret Service in its attempts to obtain records responsive to [his FOIA] request create a genuine issue of material fact making summary judgment inappropriate." (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 2.)

Plaintiff's first objection arises from a misreading of Declarant's description of the EVNAME database. Declarant avers that an EVNAME search "permits the Agency to determine if it has queried other internal and external databases such as the MCI, PRISM, the National Crime Information Center, and the Interstate Identification Index for a specific individual in the last thirty (30) days." (Smith Decl. ¶ 16.) However, Plaintiff apparently reads this statement to mean that "*the Common Index system* only searches [MCI, PRISM, MPS, WV and EVNAME] databases for *information* on individuals that ha[d] been previously checked by the Secret Service in the last THIRTY (30) days." (Pl.'s Opp'n at 7 (emphasis added).) Because the information that Plaintiff seeks "dates as far back as April 23, 2005"—long before the Secret Service searched for information responsive to Plaintiff's August 25, 2010, FOIA

9

request—Plaintiff asserts that searching the CI "was inappropriate." (*Id.* at 8.) Plaintiff is clearly mistaken under the plain language of the declaration. As Declarant describes the databases at issue, the 30-day limit applies the EVNAME system, not the CI, and the EVNAME system only indicates whether a query of other databases was made within the relevant period. When properly understood, Declarant's description of the EVNAME database raises no question of material fact about the appropriateness of the Secret Service's CI query.

Plaintiff's second objection is rooted in his belief that the Secret Service may have once stored responsive records at a now-shuttered Secret Service facility in Belleville, Illinois, and that those records either were not transferred to the Springfield office that was the locus of the agency's additional manual records search or were somehow not retrieved during the manual search. Plaintiff focuses on the fact that Agent Foster, to whom the Carbondale Police Department supposedly referred the counterfeiting matter, had been "assigned to the Secret Service[']s field office in Belleville . . . and that said office is now closed." (Pl.'s Opp'n at 9.) Plaintiff faults the Secret Service for its failure to "confirm that all the documents from the defunct Belleville, Illinois Secret Service field office were sent to the Springfield[,] Illinois Resident Office," and he deems it "unreasonable to assume . . . that the integration of documents from the Belleville, Illinois Secret Service field office to the Springfield, Illinois Resident Office was done by one person or that all the documents from the Belleville, Illinois field office stayed at the Springfield[,] Illinois Resident Office." (*Id.* at 9-10.) Plaintiff also opines that "[a] computerized search of records responsive to [his FOIA] request at the Springfield[,] Illinois Resident Office would [have] been a more appropriate approach." (*Id.* at 10.)

Nothing in the record of this case indicates that the defunct Belleville field office ever maintained any records responsive to Plaintiff's FOIA request, much less that the integration of any such records into the Springfield office's recordkeeping system was

mishandled once the Belleville office closed. In any event, speculative assertions such as these have no bearing on the adequacy of the agency's search. *See Concepción v. FBI,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009) ("[S]peculation as to the existence of additional records . . . does not render the searches inadequate."). Plaintiff also fails to recognize that, according to the Secret Service's supporting declaration, a computerized records search was undertaken with respect to the agency's entire inventory of documents and that no responsive records were found in *any* office. (Def.'s Mem, "Smith Decl.," ¶¶ 12-23.) This representation is accorded a presumption of good faith that Plaintiff's conjecture as to the possible location and existence of allegedly missing records is insufficient to rebut. *See Vento v. IRS*, 714 F. Supp. 2d 137, 145 (D.D.C. 2010) (finding that the plaintiffs' speculation that other documents exist did not rebut presumption of good faith accorded to agency's declaration).

Plaintiff's final argument regarding the inadequacy of the Secret Service's document search is based on other documents that Plaintiff received in response to a similar FOIA request made to a different agency. Plaintiff argues that, because the Drug Enforcement Administration ("DEA") found responsive documents, the Secret Service "has not made a good faith effort to obtain records and are withholding records." (Pl.'s Opp'n at 13.)[10] But none of the records that Plaintiff received from the DEA references any Secret Service investigation into counterfeiting or otherwise. And it is well established that the existence of records maintained by another agency is not dispositive of either the issue of the adequacy of an agency's search or the question of its good faith. *See Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 85 n.6 (D.D.C. 2010) (rejecting requester's argument that agency's failure to produce a

---

[10] In his request to the DEA, Plaintiff sought "any and all documents and communications agent Paul Foster had . . . relating to [the plaintiff] and his alleged involvement in counterfeiting U.S. currency discovered out of independent investigation and/or as a result of case # 20050424008 originating out of Carbondale, Illinois." (Pl.'s Opp'n. at 13.) The DEA responded by providing Plaintiff with copies of local police reports regarding Plaintiff's narcotics arrest. (*Id.*, Ex. F, "Letter from Katherine L. Myrick dated October 22, 2012.")

11

particular record is evidence of bad faith); *Accuracy in Media, Inc. v. NTSB,* No. 03-cv-0024, 2006 WL 826070, at *8 (D.D.C. March 29, 2006) (finding that plaintiff's showing of omitted documents "does not mean that they exist now or that the agency has possession of them"); *see also Chambers v. U.S. Dep't of the Interior,* 568 F.3d 998, 1003 (D.C. Cir. 2009) (noting that substantial weight traditionally is accorded to agency affidavits in FOIA "adequacy of search" cases). Indeed, "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them"; thus, courts have long held that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg,* 23 F.3d at 551).

      This is not to say that Plaintiff's showing of the existence of responsive records is entirely irrelevant; to be sure, "a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search" in certain circumstances. *See, e.g., id.* at 315 (discussing inadequate search FOIA cases in which an agency neglected "to search particular offices or files where the document might well have been found" ; "failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents" ; "ignored indications in documents found in its initial search that there were additional responsive documents elsewhere"; or ignored evidence "that . . . there was reason to believe" that responsive records existed in its files (citations omitted)). But no such circumstances are present here. Taken at its word, the Secret Service twice searched agency-wide computer databases; conducted a manual search of its Springfield, Illinois, office; interviewed the Secret Service agent who allegedly received copies of records from the Carbondale police; and sought additional information from Plaintiff in order to address, rather than ignore, the Carbondale police report that Plaintiff had appended to his FOIA request. (Smith Decl.

¶¶ 7, 12-23). This effort clearly meets the criteria for an adequate search, and Plaintiff's "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Iturralde*, 315 F.3d at 316 (internal quotations and citations omitted).

### III.  CONCLUSION

To satisfy the FOIA, an agency need only adequately describe the scope and methods of its searches and demonstrate that the places most likely to contain responsive materials were searched. *See Davidson v. Envtl. Prot. Agency,* 121 F. Supp. 2d 38, 39 (D.D.C. 2000). The Court finds that the Secret Service has met that burden in this case. There is no genuine issue of material fact as to the agency's compliance with the FOIA; accordingly, Defendant is entitled to judgment as a matter of law and its motion for summary judgment will be GRANTED. An Order accompanies this Memorandum Opinion.

DATE:  August 16, 2013

*Ketanji Brown Jackson*
Ketanji Brown Jackson
United States District Judge